## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| **CHANDLER MOORE and MOWORKS LLC,** ) ) ) | |
| **Plaintiffs,** ) ) | |
| **v.** ) ) | |
| **NORMAN GYAMFI, INSIGNIA HOLDING COMPANY, INSIGNIA ASSETS, LLC, TRIBL PUBLISHING INC., TRIBL RECORDS, LLC, MAVERICK CITY MUSIC, INC., and MAVERICK CITY MUSIC PUBLISHING LLC,** ) ) ) ) ) ) ) ) ) ) | **Civil Action File No.** <br> **<u>Jury Demand</u>** |
| **Defendants.** | |

## <u>COMPLAINT</u>

Plaintiffs Chandler Moore ("Moore") and MoWorks LLC ("MoWorks") (collectively, "Plaintiffs") bring this Complaint ("Complaint") against Defendants Norman Gyamfi ("Gyamfi"), Insignia Holding Company ("Insignia Holding"), Insignia Assets, LLC ("Insignia Assets"), TRIBL Publishing Inc. ("TRIBL Publishing"), TRIBL Records, LLC ("TRIBL Records"), Maverick City Music, Inc. ("Maverick City Music"), and Maverick City Music Publishing, LLC ("Maverick City Publishing") (collectively, "Defendants") and state and allege as follows:

## **INTRODUCTION**

1.     This case involves the all-too-common fact pattern of a business manager and his corporate alter egos taking advantage of a creative musical artist and violating the trust the artist placed in the manager.  Here, the business manager, Norman Gyamfi, exploited his fiduciary relationship with musical artist Chandler Moore by, among other things, entering into deals to enrich himself without Moore's knowledge, secretly forging Moore's name on a contract to divert monies owed to Moore into Gyamfi's own pockets, misappropriating Moore's intellectual property rights and the right to receive millions of dollars in royalties and other monies to which Moore and his company, co-plaintiff MoWorks LLC, are entitled.  Moore brings this complaint to achieve the full severance of his relationship with Gyamfi and to seek legal and equitable remedies for Gyamfi's (and his alter ego entities') misconduct, including their breaches of contract, breaches of fiduciary duties, fraud, and other related claims.

## **PARTIES**

2.     Plaintiff Chandler Moore is a Texas citizen and resident.

3.     Plaintiff MoWorks LLC is a limited liability company organized under the laws of the State of Texas and is a citizen of the State of Texas.

4.     Norman Gyamfi is a citizen and resident of Georgia and may be served at 5168 Lake Forrest Dr., Atlanta, GA 30342.

5.      Insignia Holding Company is a Georgia corporation having its principal place of business at 369 Palm Sedge Loop, Elgin, SC 29045. Insignia Holding may be served through its registered agent, Norman Kofi Gyamfi, at its registered office located at 3607 Wheeler Branch Rd., Hephzibah, GA 30815.

6.      Insignia Assets, LLC is a limited liability company organized under the laws of Delaware and, pursuant to the Georgia Long-Arm Statute, O.C.G.A. § 9-10-90 *et seq.*, may be served through its registered agent, the Corporation Trust Company, at 1209 Orange St., Wilmington, DE 19801. Upon information and belief formed upon a reasonable investigation, Plaintiffs understand the members to be residents of Georgia. Plaintiffs are not aware of any member that is a citizen of Texas.

7.      TRIBL Publishing Inc. is a Georgia corporation having its principal place of business at 369 Palm Sedge Loop, Elgin, SC 29045. TRIBL Publishing may be served through its registered agent, Norman Gyamfi, at 3607 Wheeler Branch Rd., Hephzibah, GA 30815.

8.      TRIBL Records, LLC is a limited liability company organized under the laws of Georgia and may be served through its registered agent, Anthony Brown, at 1551 Thomas Rd., Decatur, GA 30032. Upon information and belief formed upon a reasonable investigation, Plaintiffs understand the members to be residents of Georgia. Plaintiffs are not aware of any member that is a citizen of Texas.

9.      Maverick City Music, Inc., is a Georgia corporation having its principal place of business at 2411 Player Ct. Duluth, GA 30096. Maverick City Music may be served through its registered agent, Jonathan Jay, at 2411 Player Ct., Duluth, GA 30096.

10.      Maverick City Publishing LLC is a defunct limited liability company organized under the laws of the State of Georgia. Upon information and belief, Maverick City Publishing may be served through its agent, Jonathan Jay, at 2411 Player Ct., Duluth, GA 30096. Upon information and belief formed upon a reasonable investigation, Plaintiffs understand the members to be residents of Georgia. Plaintiffs are not aware of any member that is a citizen of Texas.

## ALTER EGO ALLEGATIONS

11.      Upon information and belief and at all times relevant hereto, a unity of interest and ownership has existed between Defendants Insignia Holding, Insignia Assets, TRIBL Publishing, TRIBL Records, Maverick City Music, and Maverick City Publishing. Each of them are alter ego entities of individual Defendant Norman Gyamfi and/or are directed, influenced, and controlled thereby.

12.      Throughout the Parties' relationship, Insignia Holding, Insignia Assets, TRIBL Publishing, TRIBL Records, Maverick City Music, and Maverick City Publishing represented themselves and acted as the same entity through various corporate officers including, without limitation, Norman Gyamfi. Further, the

agreements, accounting statements, and documents referenced herein refer to Insignia Holding, Insignia Assets, Maverick City Music, Maverick City Publishing, TRIBL Publishing, TRIBL Records, and several other unaffiliated Insignia entities interchangeably.

13.    While Maverick City Publishing has been a defunct entity since September 2023, Defendants have referenced Maverick City Publishing in documents and agreements as recently as 2024. The defendants also reference Maverick City Publishing as a trade name or "d/b/a" for Maverick City Music despite there being no official documentation thereof.

14.    Contrary to any legitimate agreements between the Parties, Defendants have directed that publishing monies be paid directly to Insignia entities that are nowhere mentioned in said agreements including, without limitation, Maverick City Publishing and other Insignia entities controlled by Norman Gyamfi and nowhere mentioned in any agreements between the Parties.

15.    Upon information and belief, Defendants' corporate forms have each been used as a shell for Norman Gyamfi to conduct and fund his personal business and to fund and operate the Insignia entities including, without limitation, the named Defendants, interchangeably.

16.    Upon information and belief, Norman Gyamfi and the entity Defendants acted for each other in connection with the conduct alleged herein,

performed the acts complained of herein, and breached the duties complained of herein as alter egos of each other, and any separation or distinction between the Defendants, therefore, should be disregarded.

17.    Adherence to the fiction that the Defendants exist as separate entities/individuals distinct from each other and Norman Gyamfi would amount to abuse of the corporate privilege and would promote fraud and injustice.

18.    Accordingly, as alter egos of each other, Defendants are each liable for the acts of the other.

## **JURISDICTION AND VENUE**

19.    This Court has subject matter jurisdiction over this action pursuant to , because the amount in controversy exceeds $75,000 exclusive of interest and costs, and Moore and the Defendants are citizens of different states.

20.    This Court has personal jurisdiction over Defendants because they are all citizens of Georgia.

21.    Alternatively, Insignia Assets, LLC is subject to jurisdiction under the Georgia Long-Arm Statute, O.C.G.A. § 9-10-91 because it (1) transacts business within this state; and (2) committed a tortious act or omission within this state.

22.    Additionally, this Court has personal jurisdiction over TRIBL Publishing, TRIBL Records (collectively, the "TRIBL Defendants"), and Maverick City Music because the TRIBL Defendants consented to jurisdiction in Georgia in

the Deal Memo Agreement (as defined below), an accurate copy of which is attached hereto as Exhibit A, and Maverick City Music consented to jurisdiction in Georgia in the Ownership Agreement (as defined below).

23.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and(c) because several Defendants reside in the Northern District of Georgia.

## **FACTUAL BACKGROUND**

### *Chandler Moore*

24.    Chandler Moore is a Grammy Award winning singer, songwriter, multi-instrumentalist, and worship leader known for his successful hit songs in the contemporary Christian music industry, such as "Jireh," "Lead Me On," and "Kingdom." Moore is widely recognized as a founding member and frequent collaborator with the contemporary Christian music collective, Maverick City Music.

25.    Moore has been releasing music since June 2014, and he has been a member of Maverick City since 2018. Moore's solo music as well as his collaborations have gained tremendous success, earning him more than eleven (11) Grammy Award nominations and ten (10) Gospel Music Association ("GMA") Award nominations.

26.    Moore's contribution to Maverick City's success cannot be overstated as he is the most prominent face of the group, has made significant contributions to

Maverick City's highest charting songs and albums, and has had one of the most successful solo music careers to spawn from Maverick City.

### *Norman Gyamfi*

27.    Beginning in 2020, and throughout the formative years of Moore's career, Norman Gyamfi acted as both Moore's personal and business manager, providing advice, counsel, and direction to Moore in the development and enhancement of Moore's professional career and personal life.

28.    It was around 2020 that Moore personally introduced Gyamfi to the ownership and team at Maverick City, identifying Gyamfi as his management representative. Prior to this introduction, Gyamfi had no relationship or connection to Maverick City Music and was not actively involved in Maverick City Music's business dealings.

29.    In discharging his duties as Moore's personal and business manager, Gyamfi exercised control over nearly all aspects of Moore's career, financial affairs, and business dealings, including but not limited to Moore's access to his own personal financial assets.

30.    Moore reposed great trust and confidence in and accepted Gyamfi's guidance in his business and financial decisions. Gyamfi, however, abused his power and the trust that Moore bestowed upon him, by withholding material information that would adversely affect Moore's career.

31.    It was Gyamfi's regular practice to engage in informal business dealings on behalf of Moore. Despite Moore's role as a lead singer and major contributor to Maverick City, Moore was one of the only members that had little to no formal contracts or agreements governing the terms of his business relationship with Maverick City.

32.    While still acting as Moore's personal and business manager, Gyamfi acquired an ownership interest in Maverick City Music without informing Moore. Gyamfi never disclosed his business dealings nor his plan to acquire an ownership interest in Maverick City to Moore prior to doing so.

33.    In his role as Moore's manager, Gyamfi was involved in entering Moore into agreements that would negatively affect Moore's financial interests, assets, and ownership of his created works, compositions, and master recordings.

34.    Despite the fiduciary duties he owed to Moore, Gyamfi went on to secretly transfer Moore's ownership and copyright interests in his works to Maverick City Music as well as broker a deal to convey Moore's master recordings of songs created with Maverick City to the Orchard, a Sony Music Entertainment entity.

35.    Gyamfi continued in his role as Moore's personal and business manager until 2023. Gyamfi would later go on to assume the position of Chief Executive Officer of Maverick City Music and hold various other managerial and officer

positions in each of the Defendant entities, over which he exercised dominion and control.

36.    Making matters worse, Gyamfi and the Insignia entities unlawfully retained assets and monies that were owed to Moore by wrongfully directing publishing entities, including, without limitation, Essential Music Publishing LLC, to pay all of Chandler's publishing monies directly to Gyamfi and the Insignia entities and to channel all communications and accountings through Gyamfi and the Insignia entities.

37.    Defendants' greed, exploitation, and misappropriation of Moore's assets and intellectual property have deprived Plaintiffs of their contractually owed royalties, assets, monies, and ownership interests. As a result, Plaintiffs seek judicial intervention to remedy Defendants' breaches of contract, breaches of fiduciary duties, fraudulent conduct, unlawful conversion, unjust enrichment, and self-dealing.

### *Insignia Entities*

38.    During this period, Maverick City Music spawned a number of related entities, including but not limited to the Defendant entities. Insignia Assets was created by Norman Gyamfi to function as the parent company for these entities.

39.    Gyamfi acts as a representative for each of the Defendant entities.

## *Ownership Agreement*

40.     On April 13, 2021, Moore and Maverick City Music entered into an agreement whereby Maverick City Music would convey a ten (10%) percent ownership interest in Maverick City Music to Moore upon his fulfillment of certain obligations, including but not limited to, attendance at Maverick City Music events, quarterly recording requirements, and coordination and collaboration on projects and releases.

## *The Unauthorized Sale of Maverick City Music's Masters by Gyamfi*

41.     In 2021, Gyamfi brokered a deal selling Maverick City's masters to The Orchard Enterprises, Inc. d/b/a The Orchard (the "Orchard"), a division of Sony Music Entertainment specializing in music distribution (the "Sale"). Through this deal, Gyamfi received a commission. Despite the significance of the transaction and Gyamfi's close relationship with Moore, Moore never received prior notice or disclosure of the Sale of his masters nor information that Gyamfi was profiting from the Sale.

42.     Upon information and belief, following the Sale, Gyamfi demanded that Essential Music Publishing LLC, the Christian music publishing division of Sony Music Entertainment ("Essential"), pay all proceeds earned in connection with the publication of Moore's compositions and works directly to the TRIBL Defendants and Maverick City Music instead of Moore.

43.     Gyamfi also demanded that Essential send all accountings and communications directly to him and that Essential limit their communications with Moore.

44.     Upon information and belief, Essential requested proof of TRIBL Defendants' and Maverick City Music's rights to collect and receive proceeds and accountings on behalf of Moore before acceding to Gyamfi's demands to bypass Moore on such payments and information.

45.     Upon information and belief, Gyamfi had a publishing agreement drafted in an effort to comply with Essential's requirements and fraudulently affixed Moore's signature thereon as set forth below.

### *Fraudulent Publishing Agreement*

46.     On January 1, 2022, a Publishing Agreement entitled "Exclusive Songwriting Co-Publishing Agreement" ("Publishing Agreement") was fraudulently entered into by Gyamfi on behalf of Moore and Maverick City Music without Moore's consent. In a communication with Gyamfi, Moore generally discussed a potential co-publishing agreement with Maverick City Music but never reviewed or discussed the Publishing Agreement nor the terms therein.

47.     Moore's signature was forged onto the Publishing Agreement, as Moore had no knowledge of the existence of the Publishing Agreement at the time

it was signed, never signed the Publishing Agreement himself, nor authorized Gyamfi or anyone else to sign the Publishing Agreement on his behalf.

48.    Moore's signature was forged throughout the Publishing Agreement and Exhibits. The Publishing Agreement purported to assign and transfer an undivided fifty percent (50%) interest in Moore's compositions, works, copyrights, titles and interests in proceeds obtained as a result of Moore's past and future works, compositions, and services to Maverick City Music, including but not limited to Moore's solo works and collaborations with Maverick City.

49.    Further, the fraudulently obtained Publishing Agreement granted Maverick City Music an irrevocable Power of Attorney, purporting to allow Maverick City Music to utilize Moore's name and/or stand in his place or stead to take any action, sign and execute any document, and transfer Moore's rights in his works and compositions.

50.    The fraudulently obtained Power of Attorney is unlimited in scope and duration, as the Publishing Agreement explicitly states that the Power of Attorney will survive the termination of said agreement. The Power of Attorney clause also purports to allow Maverick City Music to take any of the aforementioned actions even if Moore refuses to sign the documents or agree to the transfers as long as a good faith effort is made to obtain his consent and/or signature.

51.     In addition to the various other fraudulently obtained rights, the Publishing Agreement explicitly permits Maverick City Music to sign letters and notices of assignment of Moore's copyrights and rights to proceeds and accountings attached to the Publishing Agreement as exhibits.

52.     Moore's signature was also forged onto several attachments to the forged Publishing Agreement, including (1) the Assignment of Copyright in all prior compositions ("Assignment"); (2) the Notice of Transfer to Public Performance Rights Society ("Notice of Transfer"); (3) the Notice of Assignment of Copyrights and Income ("Notice of Assignment"); and (4) Christian Copyright Licensing International Notice of Assignment ("CCLI Notice").

53.     In the Assignment, Moore purportedly irrevocably transfers and assigns an undivided fifty percent (50%) interest in his copyrighted works dating back to 2018. Moore's signature was forged onto the Assignment, as Moore never signed the Assignment himself nor authorized it to be signed on his behalf.

54.     In the Notice of Transfer, Moore purportedly names Maverick City Music as an administrator over his public performance rights and requires that all proceeds be directed to Maverick City Music rather than to him until Maverick City Music notifies the Public Performance Rights Society that the transfer agreement is terminated. Moore's signature was forged onto the Notice of Transfer, as Moore never signed the Notice of Transfer himself nor authorized it be signed on his behalf.

55.     In the Notice of Assignment, Moore purportedly states that he transferred to Maverick City Music the exclusive right to own and administer all musical compositions that he owns or co-owns and requires that all proceeds earned in relation to the aforementioned compositions be paid directly to Maverick City Music. Moore's signature was forged onto the Notice of Assignment, as Moore never signed the Notice of Assignment himself nor authorized it be signed on his behalf.

56.     In the CCLI Notice, Moore purportedly authorizes and directs the Copyright Administration of the Christian Copyright Licensing International to pay all proceeds earned in relation to Moore's public performance rights directly to Maverick City Music. Moore's signature was forged onto the CCLI Notice, as Moore never signed the CCLI Notice himself nor authorized it be signed on his behalf.

57.     Additionally, the Publishing Agreement purports to grant Maverick City Music the exclusive right to collect and receive proceeds from all licenses issued under the Publishing Agreement in perpetuity.

58.     When confronted about the fraudulently obtained Publishing Agreement in 2024, Gyamfi stated that he was unsure who had signed on Moore's behalf but that he had access to the IP address information and would look further into it.

59.    Gyamfi never provided any further information on Moore's forged signatures.

### *Deal Memo*

60.    On April 18, 2024, Moore and TRIBL Defendants entered into a binding agreement entitled "Production Deal Memo" ("Deal Memo") whereby Moore agreed to satisfy specific live performance, recording, and publishing obligations.

61.    The Deal Memo obligated Moore to (1) record one album of at least ten (10) newly recorded master recordings ("Recording Obligations"); (2) commit to performing in a series of forty (40) concert-tour dates by December 21, 2024 ("Touring Obligations"); and (3) deliver at least twelve (12) compositions ("Publishing Obligations"). A true and correct copy of the Deal Memo is attached hereto as **Exhibit A**.

62.    In connection with Moore's Recording Obligations, the Deal Memo obligates TRIBL Defendants to pay Moore (1) an advance of $300,000.00 upon execution of the Deal Memo; (2) $125,000.00 towards the initial recording costs upon execution of the Deal Memo; and (3) $125,000.00 following delivery of the recorded product. If the mutual extension option is exercised, TRIBL Defendants would be obligated to credit seventy-five percent (75%) of royalties derived from

the recorded product at a minimum of $750,000.00 and a maximum of $1,500,000.00.

63.    In connection with Moore's Touring Obligations, the Deal Memo obligates TRIBL Defendants to pay Moore an advance of $1,400,000.00 as follows: (1) $200,000.00 upon execution of the Deal Memo; (2) $100,000.00 upon completion of twenty (20) shows; (3) $100,000.00 following completion of the final show; and (4) $1,000,000.00 acknowledged as received.

64.    In connection with Moore's Publishing Obligations, the Deal Memo obligates TRIBL Defendants to pay Moore an advance of $250,000.00 as follows: (1) $125,000.00 upon execution of the Deal Memo; and (2) $125,000.00 upon the one-year anniversary of the Deal Memo. Further, TRIBL Defendants are required to pay Moore (1) seventy-five (75%) percent of all mechanical royalties; (2) fifty (50%) percent of all performance royalties; (3) seventy-five (75%) of all royalties from synchronization rights and covers; and (4) seventy-five (75%) of all other income received. With respect to the works and compositions written prior to the Deal Memo, the Publishing Agreement purportedly still controls.

65.    The Deal Memo obligated TRIBL Defendants to pay Moore fifty (50%) percent of all net profits from the sound recordings excepting all third party costs and expenses paid by TRIBL Defendants for the sound recordings, provide semi-annual accounting records within ninety (90) days following the closing of each

quarter, and adhere to the policy of no cross collateralization of compositional royalties with sound recording royalties.

66.    The Deal Memo requires TRIBL Defendants to convey Moore a fifteen percent (15%) ownership interest in Maverick City Music in accordance with the following vesting schedule: (1) 7.5% vested immediately upon the later of the execution of the Deal Memo and the equity documents (which were to be entered into separately for the purpose of effectuating the transfer of ownership); and (2) 7.5% vested upon the later of Moore's satisfactory delivery of the initial period album (pursuant to Moore's Recording Obligations), completion of the forty (40) shows (as contemplated by the Touring Obligations), and execution of the equity documents.

67.    The Deal Memo explicitly states that TRIBL Defendants will cover marketing expenses in the amount of $100,000.00 at a minimum and that marketing is a non-recoupable expense.

68.    The Deal Memo further contemplated Moore and TRIBL Defendants' intention to enter into a longer, more formal publishing agreement and explicitly recognizes their obligation to negotiate the terms to be included therein in good faith.

69.    Moore satisfied his live performance and publishing obligations required by the Deal Memo, and Moore and TRIBL Defendants renegotiated the terms of the recording obligation clause.

70.    Despite Moore's satisfaction of the Touring Obligations, TRIBL Defendants cancelled six (6) shows and failed to compensate Moore in accordance with the terms of the Deal Memo.

71.    Further, in accordance with his obligations under the Deal Memo, Moore and TRIBL Defendants agreed that Moore's latest album, comprised of seven (7) songs (the "Latest Album") would satisfy Moore's Recording Obligations, subject to their understanding that three (3) of Moore's preexisting recorded songs would be used to create a deluxe version of the album and that Moore would be available to serve as an executive producer on a number of Maverick City records.

72.    Upon request from TRIBL Defendants, Moore provided a proposed written amendment to the Deal Memo memorializing the oral agreement.

73.    During the process of memorializing the oral agreement between Moore and TRIBL Defendants, Gyamfi and TRIBL Defendants unilaterally attempted to impose completely different terms that were well beyond the scope of what was originally agreed.

74.    For example, Gyamfi and TRIBL Defendants demanded, among other things, that Moore also agree to extend Moore's publishing commitment an additional two (2) years, to withdraw Moore's ownership stake in Maverick City Music, and to receive a fifteen percent (15%) override on Moore's subsequent two albums.

75.    Due to Gyamfi and TRIBL Defendants' unconscionable requests and refusal to negotiate in good faith, the negotiations on a written amendment fell apart, and the parties continued their duties under the terms of the original Deal Memo subject to the oral agreement regarding satisfaction of Moore's Recording Obligations.

76.    Additionally, throughout this period, Moore had been requesting accurate and timely accountings in accordance with TRIBL Defendants' obligations under the Deal Memo to no avail. On the rare occasions that Moore received accountings, they were not timely and did not accurately reflect the royalties to which Moore is entitled.

77.    As of the date of this filing, Moore has yet to receive accountings that accurately reflect the agreements lawfully entered into between himself and Defendants.

78.    Upon information and belief, TRIBL Defendants currently owe Moore more than $800,000.00 in publishing proceeds in accordance with TRIBL Defendants' obligations under the Deal Memo.

79.    After Moore began to demand accurate accountings, and despite TRIBL Defendant's acceptance of the Latest Album, Moore's substantial performance of his obligations under the Deal Memo, and TRIBL Defendants' improper cross-collateralization of compositional royalties and sound recording

royalties, TRIBL Defendants sent Moore a Notice of Breach of the Deal Memo ("Notice of Breach") stating that Moore was in breach of the Deal Memo for failure to deliver ten (10) newly recorded masters recordings and improperly demanded that Moore remedy the alleged breach within thirty (30) days.

80.    The Notice of Breach was sent as a pretextual reaction once Moore began questioning the wrongful activities of Gyamfi and Defendants.

81.    The thirty (30) day period to remedy the alleged breach ended on or around April 25, 2025. Upon information and belief, TRIBL Defendants never intended to act upon their Notice Letter since the parties to the Deal Memo had already accepted Moore's Latest Album in satisfaction of the Recording Obligation.

82.    In regard to royalties, Defendants have and continue to unlawfully cross-collateralize monies earned from Moore's entire catalog of masters with his new masters, contrary to the terms of the Deal Memo.

83.    Defendants continue to withhold proceeds, royalties, and monies rightfully owed to Moore in violation of the Deal Memo.

84.    Defendants' unlawful, fraudulent, and unconscionable business practices have permeated and, thereby, tainted every agreement between Plaintiffs and Defendants as evidenced by the innumerable breaches, violations, and instances of misconduct referenced herein.

85.    Similarly, Gyamfi's unlawful business practices and willful misconduct have led to him being the subject of additional ongoing litigation commenced by other previous members and owners of the Defendant entities.

## COUNT I: BREACH OF CONTRACT AND DECLARATORY JUDGMENT AGAINST DEFENDANTS

86.    Plaintiffs incorporate the numbered paragraphs above as if fully set forth herein.

87.    In 2024, Plaintiffs and TRIBL Defendants entered into the Deal Memo.

88.    Plaintiffs have performed their obligations under the Deal Memo.

89.    In accordance with the Deal Memo, TRIBL Defendants were required to (1) pay Plaintiffs the remaining $125,000.00 publishing advance by April 23, 2025; (2) pay Plaintiffs publishing royalties in accordance with the terms of the Royalties subsection; (3) produce accurate and timely accountings to Plaintiffs; (4) pay Plaintiffs fifty percent (50%) of all net profits from the recordings after all costs have been recuperated.

90.    TRIBL Defendants failed to pay Plaintiffs the $125,000.00 publishing advance due and payable on April 23, 2025, and have still yet to pay Plaintiffs as of the date of this filing.

91.    Further, rather than collecting their portion of net profits after recoupment, TRIBL Defendants have and continue to collect fifty percent (50%) of

all revenue earned from Moore's recordings under the Deal Memo and allocate only Plaintiffs' share of net profits to recuperate all costs.

92.     Accordingly, TRIBL Defendants continue to retain publishing proceeds paid by the Orchard that should have been paid directly to Plaintiffs.

93.     To date, TRIBL Defendants still owe Plaintiffs more than $800,000.00 pursuant to their obligations under the Deal Memo and have yet to provide Plaintiffs accurate accountings with calculations that adhere to the terms of the Deal Memo.

94.     Despite entering into the Deal Memo with TRIBL Defendants, monies received therefrom have channeled through and been attributed to a number of different Insignia entities including, without limitation, Maverick City Music.

95.     As a result, Defendants have materially breached the Deal Memo.

96.     As a result of Defendants' material breach of the Deal Memo, Plaintiffs have suffered damages in an amount to be determined at trial.

97.     Plaintiffs are also entitled to a declaratory judgment that Defendants materially breached the Deal Memo, thereby rendering the Deal Memo void, voidable, or terminable by Plaintiffs.

## <u>COUNT II: UNJUST ENRICHMENT AGAINST DEFENDANTS</u>

98.     Plaintiffs incorporate the numbered paragraphs above as if fully set forth herein.

99.    Plaintiffs have substantially performed the Recording, Publishing, and Touring Obligations outlined in the Deal Memo.

100.    Defendants have unlawfully appropriated and retained Plaintiffs' publishing proceeds amounting to over $800,000.00 which Plaintiffs have a legal right to receive, despite demands therefor.

101.    Defendants have also benefited from the unlawful retention of other monies that rightfully belong to Plaintiffs.

102.    As a result of Defendants' unjust enrichment, Plaintiffs are entitled to damages and/or disgorgement in an amount to be determined at trial.

## COUNT III: BREACH OF FIDUCIARY DUTY
## AGAINST NORMAN GYAMFI

103.    Plaintiffs incorporate the numbered paragraphs above as if fully set forth herein.

104.    Gyamfi had a fiduciary relationship with Moore wherein Gyamfi acted as Moore's personal and business manager for several years. Moore and Gyamfi shared a confidential relationship that bestowed upon Gyamfi substantial control and influence over Moore's professional career, business interests, and finances, including his personal finances. Moore placed significant trust and dependence in Gyamfi to act in his best interest.

105.    In his role as Moore's personal and business manager, Gyamfi was required and expected to prioritize Moore's interests and avoid self-dealing, disclose all material information that Moore would be entitled to know, avoid engaging in dishonest or deceptive practices, and avoid mismanaging Moore's assets.

106.    While still acting as Moore's manager, Gyamfi secretly acquired an ownership interest in Maverick City Music without consulting or disclosing this information to Moore who was a member of Maverick City at that time. Gyamfi brokered a deal with the Orchard to personally benefit himself at the expense of Moore. Gyamfi also was involved in the conversion of all of the compositions that Moore wrote or co-wrote, and the proceeds thereof, through Gyamfi's execution of the forged Publishing Agreement and collateral documents. Each of these actions constitute a willful breach of the fiduciary duty owed to Moore and a violation of the sacred trust and confidence that must exist in a manager-principal relationship.

107.    As a result of Gyamfi's repeated breaches of his fiduciary duties to Moore, unauthorized acts, and abuses of his power and authority, Moore has suffered significant harm and is entitled to compensatory and punitive damages, and equitable relief including disgorgement and an accounting, against Gyamfi in an amount to be determined at trial.

## COUNT IV: COMPUTER FORGERY AGAINST
## DEFENDANTS

108.    Plaintiffs incorporate the numbered paragraphs above as if fully set forth herein.

109.    Gyamfi and Maverick City Music were involved in creating a forged signature for Moore in execution of the Publishing Agreement. Moore had no knowledge of the Publishing Agreement, did not sign the Publishing Agreement, and did not authorize anyone to sign the Publishing Agreement on his behalf.

110.    Gyamfi and/or a Maverick City Music representative acting at his direction knowingly signed Moore's name on the Publishing Agreement, Assignment, Notice of Transfer, Notice of Assignment, and CCLI Notice (collectively, the "Agreements") with the knowledge that Moore was neither aware of the existence of these agreements nor had authorized anyone to sign on his behalf with the intent to unlawfully acquire Moore's rights in his works and compositions.

111.    If the Agreements had been tangible documents and Gyamfi and/or another Maverick City Music representative had signed Moore's name as was done on the electronic Agreements, that individual would have committed the crime of forgery in the first degree pursuant to Ga. Code Ann. §§ 16-9-1(b) and 93(d).

112.    Gyamfi signed on behalf of Maverick City Music and reaped the benefits of misappropriating obtaining Moore's rights including, but not limited to,

Moore's exclusive rights in his copyrighted works pursuant to 17 U.S.C. § 106. Pursuant to the Deal Memo, Gyamfi and Maverick City Music continue to retain certain rights in Moore's works and exploitation proceeds therefrom predating the Deal Memo because, in line with Gyamfi's wrongful and unconscionable business practices, the Deal Memo reinforces the terms of the Publishing Agreement with respect to compositions written prior to the execution of the Deal Memo.

113.    Gyamfi and Maverick City Music's conduct as described in this Complaint constitutes computer forgery as defined in Ga. Code Ann. § 16-9-93(d).

114.    Gyamfi and Maverick City Music's conduct has caused significant harm to Moore, and Moore is, therefore, entitled to compensatory and punitive damages in an amount to be determined at trial.

115.    Moore is also entitled to a declaratory judgment that the Publishing Agreement was fraudulently obtained and is, therefore, void.

## COUNT V: IDENTITY FRAUD AGAINST DEFENDANTS

116.    Plaintiffs incorporate the numbered paragraphs above as if fully set forth herein.

117.    Pursuant to Ga. Code Ann. § 16-9-121(a)(5) a person commits identity fraud when that person willfully and fraudulently, "[w]ithout authorization or consent, creates, uses, or possesses with intent to fraudulently use any counterfeit or fictitious identifying information concerning a real person with intent to use such

counterfeit or fictitious identification information for the purpose of committing or facilitating the commission of a crime or fraud on another person[.]"

118.    "Digital or electronic signatures" constitute "identifying information" under Ga. Code Ann. § 16-9-120(5)(J).

119.    The signature affixed to the Publishing Agreement by Gyamfi or at his direction on behalf of Moore was not provided by Moore, nor is it his actual signature. The signature was, therefore, a fictitiously created signature used with the intent to falsely express Moore's assent to the Publishing Agreement and thereby fraudulently convey his rights and interests in his works and compositions to Maverick City Music.

120.    Further, the fictitious signatures on the Assignment, Notice of Transfer, Notice of Assignment, and CCLI Notice were used with the intent to falsely express Moore's intent to divert and direct all of Moore's proceeds and accountings to Maverick City Music. Through these fictitious signatures, Gyamfi and Maverick City Music intended to defraud not only Moore, but also public performance rights societies and publishing entities including without limitation, the Orchard.

121.    Gyamfi and Maverick City Music's fraudulent conduct has resulted in significant harm to Moore entitling Moore to an amount to be determined at trial. Because Defendants acted intentionally and willfully to defraud Moore, Moore is entitled to statutory, compensatory, and punitive damages, and his fees and expenses

incurred in connection with this action, pursuant to Ga. Code Ann. § 16-9-130. Further, Moore is entitled to a declaratory judgment that the signatures on the Publishing Agreement, Assignment, Notice of Transfer, Notice of Assignment, and CCLI Notice were fictitiously created to defraud Moore and that the aforementioned agreements are, therefore, void.

## COUNT VI: CONVERSION AGAINST DEFENDANTS

122.    Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

123.    At the time of creation, Moore retained ownership interests in his compositions and sound recordings pursuant to 17 U.S.C. § 201.

124.    Through the forged signatures and Defendants' fraudulent and/or unauthorized transfers and assignments of Moore's ownership and copyright interests via the Publishing Agreement, Assignment, Notice of Transfer, Notice of Assignment, and CCLI Notice, the Defendants unlawfully obtained possession of Moore's interests in his compositions and works.

125.    While Defendants had limited authority to collaborate with Moore, Defendants acted in bad faith and exceeded their authority by misappropriating Moore's interests in and unlawfully directing and diverting Moore's right to receive proceeds, royalties, and accountings in regard to his publishing, touring, and recording obligations.

126.    Due to Defendants' conversion of Moore's interests, proceeds, assets, and personal property, Moore is entitled to damages in the amount of the value of the converted property. Further, because the transfer of Moore's assets was intentional, willful, and fraudulent, it should be set aside as void, and Moore is entitled to punitive damages against Defendants.

## COUNT VII: RESCISSION AGAINST DEFENDANTS

127.    Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

128.    Gyamfi's fraudulent and unconscionable business practices negatively affected Moore's early career and has been a defining characteristic of their business relationship from that moment on.

129.    Every agreement between Moore and Defendants is so tainted by misappropriations, breaches of fiduciary duty, forgery, breaches of contract, fraud, and unconscionability that they all fail of their essential purpose and should be rescinded as if void ab initio.

130.    Plaintiffs are, therefore, entitled to a declaratory judgment that all agreements between Moore and Defendants are void ab initio, voidable, and/or otherwise subject to rescission by Plaintiffs.

## COUNT VIII: EQUITABLE ACCOUNTING AGAINST DEFENDANTS

131.    Plaintiffs incorporate by reference the allegations above as if fully set forth herein.

132.    By virtue of the aforementioned conduct, Defendants have used resources and monies belonging to Plaintiffs for the benefit of themselves in a manner that damages Plaintiffs.

133.    The balance due from Defendants to Plaintiffs resulting from Defendants' breach of their fiduciary and contractual duties can only be ascertained by an accounting.

134.    Defendants have not provided an accurate accounting.

## JURY DEMAND

135.    Plaintiffs demand a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court award the following relief:

(A)    Declaratory judgment that Defendants fraudulently obtained drafted and executed the Publishing Agreement, Assignment, Notice of Transfer, Notice of Assignment, CCLI Notice, and Deal Memo and that they are, therefore, void;

(B)     Declaratory judgment that all agreements between Plaintiffs and any of the Defendants are rescinded and, hereby, void ab initio;

(C)     Compensatory damages in an amount to be determined at trial;

(D)     Punitive damages in an amount to be determined at trial;

(E)     Disgorgement in an amount to be determined at trial;

(F)     An equitable accounting of the profits owed to Plaintiffs by Defendants as a result of Defendants' conduct described in this Complaint;

(G)     Prejudgment interest and post-judgment interest;

(H)     Attorneys' fees, costs, and expenses incurred herein pursuant to the Attorneys' Fees provisions of the Deal Memo and Ownership Agreement and Ga. Code Ann. § 16-9-130; and

(I)      Such other and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,


BRADLEY ARANT BOULT CUMMINGS, LLP

/s/ *Anne H. Baroody*

Anne H. Baroody
Georgia Bar No. 475569
Promenade Tower
1230 Peachtree Street NE, 21st Floor
Atlanta, Georgia 30309
Tel: 404-868-2100
Fax: 404-522-8409
abaroody@bradley.com

Samuel D. Lipshie*
Charles E. Elder*
Dawn M. Jackson*
1221 Broadway, Suite 2400
Nashville, TN 37203
Tel: 615-244-2582
Fax: 615-252-6380
slipshie@bradley.com
celder@bradley.com
djackson@bradley.com
*pro hac vice forthcoming*

*Counsel for Plaintiffs Chandler Moore and
MoWorks, LLC*