IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| CHANDLER MOORE and MOWORKS LLC,<br><br>Plaintiffs,<br><br>v.<br><br>NORMAN GYAMFI, INSIGNIA HOLDING COMPANY, INSIGNIA ASSETS, LLC, TRIBL PUBLISHING INC., TRIBL RECORDS, LLC, MAVERICK CITY MUSIC, INC., and MAVERICK CITY MUSIC PUBLISHING LLC,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    **Civil Action File No. 1:25-CV-05635-SEG** |

## DECLARATION OF MARKEL RINGER

I, Markel Ringer, pursuant to 28 U.S.C. § 1746 and in support of Plaintiffs' Memorandum in Opposition to the Motion for a Temporary Restraining Order and Preliminary Injunction (the "Response"), declare as follows:

1. I am Plaintiff Chandler Moore's music and personal manager and the Chief Operating Officer for MoWorks LLC. Unless expressly stated otherwise, I have personal knowledge of the facts contained herein.

2. I began working as Moore's music manager in February 2024.

3. I was involved in Moore's negotiation of the terms of the Deal Memo. A true and accurate copy of the Deal Memo is attached to the Declaration of Chandler Moore as Exhibit A.

4. The Deal Memo required Moore, in pertinent part, to (1) record one album of at least ten (1) newly recorded master recordings; (2) commit to performing in a series of forty (40) concert-tour dates by December 21, 2024; and (3) provide at least twelve (12) compositions. [Moore Declaration - Exhibit A - Deal Memo, Term/Product Commitment, Touring, Music Publishing - (ix) Minimum Delivery/Release Requirement].

5. In satisfaction of his recording obligations, Moore recorded eleven (11) songs for the live album, *Chandler Moore: Live in Los Angeles* (the "Album"). Only seven (7) songs were released on the Album because Tribl wanted to release a deluxe version of the Album that would include Moore's studio recordings. Moore gave Tribl authority to use the studio recordings for the deluxe version of the Album and made himself available to serve as an executive producer on a number of Maverick City Records. Tribl released the Album on August 2, 2024.

6. A deluxe version of the Album was never released due to Tribl's own issues, unrelated to Moore, accessing their files from the studio master recordings.

7. In connection with the recording obligations, the Deal Memo requires Tribl to pay Moore (1) an initial advance of $300,000.00 upon execution of the Deal

Memo; (2) $125,000.00 towards the initial recording costs upon execution of the Deal Memo; and (3) an additional $125,000.00 following delivery of the recorded product. [Moore Decl., Ex. A, Recording Fund/Artist Advance].

8. Tribl paid the initial advance of $300,000.00 and the first $125,000.00 on May 6, 2024. Following the recording of the Album, Tribl paid Moore the second $125,000.00 payment on July 22, 2024.

9. During the Term of the Deal Memo, Moore committed to perform in the Kingdom World Tour and the Good News Tour in satisfaction of his touring obligations under the Deal Memo. The Kingdom World Tour was scheduled for ten (10) shows and the Good News Tour was scheduled for 30 shows. During the Good News Tour, however, Tribl unilaterally cancelled the last six (6) shows, and they never rescheduled those performances. Moore performed the other 34 shows as agreed.

10. In connection with the touring obligations, the Deal Memo requires Tribl to pay Moore $1,400,000.00 as follows: (1) $200,000.00 upon execution of the Deal Memo; (2) $100,000.00 upon completion of twenty (20) shows; (3) $100,000.00 following completion of the final show; and (4) $1,000,000.00 was acknowledged as received. [Moore Decl., Ex. A, Touring].

3

11. Despite Moore's satisfaction of his tour obligations under the Deal Memo, Tribl has still yet to pay $100,000.00 owed upon completion of the final show in accordance with the terms of the Deal Memo.

12. During the term of the Deal Memo, Moore provided original music compositions in satisfaction of his publishing requirements under the Deal Memo.

13. In connection with the publishing obligations, the Deal Memo requires Tribl to pay Moore $250,000.00 as follows: (1) $125,000.00 upon execution of the Deal Memo; and (2) $125,000.00 upon the one-year anniversary of the Deal Memo. Tribl is also required to pay Moore (1) seventy-five (75%) percent of all mechanical royalties; (2) fifty (50%) percent of all performance royalties; (3) seventy-five (75%) of all royalties from synchronization rights and covers; and (4) seventy-five (75%) of all other income received. [Moore Decl., Ex. A, Music Publishing – (v) Advances and (vi) Royalties].

14. Although Tribl paid the first publishing advance, Tribl has yet to pay the second advance of $125,000.00, which was due on April 24, 2025. As of the date of this declaration, Tribl has still not paid the second advance. Accordingly, Tribl still owes Moore over $800,000.00 in publishing monies and royalties.

15. The Deal Memo requires Tribl to pay Moore fifty (50%) percent of all net profits from the sound recordings ("less all bonafide third party out of pocket costs and expenses paid by TRIBL")), provide semi-annual accounting records

4

within ninety (90) days following the closing of each quarter, and adhere to the policy of no cross collateralization of compositional royalties with sound recording royalties. Further, the Deal Memo expressly states that Tribl will cover marketing expenses in the amount of $100,000.00 at a minimum and that marketing is a non-recoupable expense.

16. Tribl has failed to provide timely accountings for 2024 and has yet to provide any accurate accountings or financial records whatsoever despite my repeated requests. Further, the accounting records that have been provided show that Tribl has been improperly cross collateralizing the royalties and recouping marketing expenses for the entirety of the Deal Memo term.

17. The Deal Memo requires Tribl to convey Moore a fifteen percent (15%) ownership interest in Maverick City Music in accordance with the following vesting schedule: (1) 7.5% vested immediately upon the later of the execution of the Deal Memo and the equity documents (which were to be entered into separately for the purpose of effectuating the transfer of ownership); and (2) 7.5% vested upon the later of satisfactory delivery of the initial period album, completion of the forty (40) shows, and execution of the equity documents. [Moore Decl., Ex. A, Maverick City Music Ownership]

18. Tribl has yet to convey Moore an ownership interest in Maverick City Music pursuant to the terms of the Deal Memo.

19. Further, on January 21, 2026, I received an email from Essentials Music Publishing informing me that Essentials Music Publishing was no longer the administrator for Tribl. A true and accurate copy of this email is attached hereto as **Exhibit A**. Tribl never gave us notice that they were changing administrators.

20. Prior to the filing of this lawsuit, I communicated my concerns about the inaccuracies and improper entries in the accounting records on multiple occasions to Erik (EJ) Gaines and Norman Gyamfi, who purported to act as executives of Tribl.

21. In oral communications with Mr. Gaines, he informed me that Moore's royalties were being cross-collateralized because Gyamfi considered the royalties as one big pot of money, not separate.

22. On March 6, 2025, I questioned Gyamfi about the improper cross collateralization of Moore's royalties to which he responded that "[m]echanical royalties are paid to his publisher still; the rest of the entire deal is crossed, there is one company[.]" A true and accurate copy of that email communication is attached hereto as **Exhibit B**.

23. Since the filing of this lawsuit, Tribl and Gyamfi have made numerous retaliatory efforts to interfere with Moore's career. For example, Tribl recently removed Moore as a co-primary artist on all Maverick City Music songs to which he has contributed on Spotify.

24. The record "God I'm Just Grateful" was released by Elevation Worship in November 2025 and was not recorded nor released subject to the Deal Memo. The recording of "God I'm Just Grateful" planned for release on Friday, February 6, 2026 and that Tribl seeks to enjoin is also not subject to the Deal Memo.

25. By enjoining Moore during the pendency of this lawsuit, Moore's income from publishing, royalties, and live performances will decrease significantly.

26. I was never aware of an entity named "Tribl Music Group, LLC" prior to Defendants claiming that it was the counterparty to the Deal Memo in this lawsuit.

I declare under penalty of perjury under the laws of the United States of America and the State of Georgia that the foregoing is true and correct.

February 2, 2026                                      Markel Ringer

**EXHIBIT A**

**From:** Kevin Kookogey <kevin@kookogey.com>
**Subject: Re: GIJG - Radio Version**
**Date:** January 23, 2026 at 12:11:08 PM CST
**To:** Markel Ringer <markel@moworksent.com>
**Cc:** Rankins Andie Essential Music Publishing <Andie.Rankins@pmgsonymusic.com>

Hi Andie - hope you are well. I asked Markel to loop me in here because Chandler needs access to his royalty statements and accountings from during the time that Essential administered them. We will deal with Norman and EJ to get the going forward data. Thank you. - Kevin Kookogey

On Jan 23, 2026, at 12:07 PM, Markel Ringer <markel@moworksent.com> wrote:

Understood.. how do we access all the previous records/Statements. Are you guys completing accounting through Q4 2025?

Thanks
Markel Ringer
Sent from my iPhone

On Jan 21, 2026, at 4:37 AM, Rankins, Andie, Essential Music Publishing <Andie.Rankins@pmgsonymusic.com> wrote:

Hi Markel,

We no longer administer for Maverick City. You will need to get that from them.

Andie Rankins, CP
Vice President, Publishing Administration
Certified Paralegal
Essential Music Publishing

**From:** Markel Ringer <markel@moworksent.com>
**Sent:** Tuesday, January 20, 2026 6:34:26 PM
**To:** Rankins, Andie, Essential Music Publishing <Andie.Rankins@pmgsonymusic.com>
**Subject:** GIJG - Radio Version

EXTERNAL SENDER

Hey Andie,
   Hope all is well :-) We are putting out a radio version of GIJG and need the pushing copy we can provide for our radio team — can you provide this?

Thanks!

Markel Ringer
VP Operations / Production
310-525-9007
Sent from my iPhone

This email originated from outside of Sony Music. Do not click links or open attachments unless you recognize the sender and know the content is safe.

**EXHIBIT B**

Begin forwarded message:

**From:** Norman Gyamfi <norman@theichogroup.com>
**Subject: Re: Pub Payout**
**Date:** March 7, 2025 at 10:27:35 AM CST
**To:** Markel Ringer <markel@moworksent.com>
**Cc:** Gaines EJ <ej@insigniacollab.com>, Keesha Brickhouse <keesha@moworksent.com>

My guy mechanicals is Pennies, EJ please break down publishing for Markel, and no you are requesting we payout from his copublishing income while his account at Tribl remains unrecouped . Which we cannot do, we will however honor the next advance stated in the agreement



**Norman Gyamfi**
Partner, Icho Group

**O** +1 (478)-412-3939  **W**  TheIchoGroup.com

On Mar 6, 2025, at 21:07, Markel Ringer <markel@moworksent.com> wrote:

Isn't the money we requesting a payout for his mechanicals?

Have you been able to update contact info for statements? Would love to get a betting understanding of what needs to be recouped and how much has been earned so far.

Markel Ringer
VP Operations / Production
310-525-9007
Sent from my iPhone

On Mar 6, 2025, at 7:22 PM, Norman Gyamfi <norman@theichogroup.com> wrote:

Mechanical royalties are paid to his publisher still; the rest of the entire deal is crossed , there is one company , there was one invoice and one advance issued for various services. The fact that one portion of the deal makes money faster than others is the very nature of the deal so that other areas mitigate risk.

He received the advance and it has to be paid back, we aren't limited to using sound recording royalties to do so. It clearly states his recording deal and publishing deal are both with Tribl , why would recoupment of deal with one company be separate.

As stated he is to receive an additional publishing advance on the 1 year anniversary of the deal. All other advances have been paid.



**Norman Gyamfi**
Partner, Icho Group

**O** +1 (478)-412-3939 **W**  TheIchoGroup.com

On Mar 6, 2025, at 20:14, Markel Ringer <markel@moworksent.com> wrote:

Hey Norm,
  Just wanted to circle back on the conversation from last week and see if you've considered a pub-payout for Chan. I had a chance to review our deal memo and there is language that speaks to cross-collateralization:
**"No Cross- Collateralization**   No cross collateralization of mechanicals with sound recording royalties."

My sincere hope is that we can align on this. To be completely transparent, not receiving any payout of our publishing will a major impact on Chandler's business and personal finances. We are excited about moving forward with a new album and have turned the corner with our participation with Mav dates in the summer. I hope we can continue a spirit of partnership and collaboration as we move forward in good faith.

Thanks!

<Chandler_Moore_-_TRIBL_-_Deal_Memo_-_FINAL_(4.pdf>

Markel Ringer
MoWorks LLC
VP Operations / Production
C: 310-525-9007
E: markel@moworksent.com

**CONFIDENTIALITY NOTICE:**
This message is intended exclusively for the individual or entity to which it is addressed. This communication may contain information that is proprietary, privileged, confidential or otherwise legally exempt from disclosure. If you are not the named addressee, you are not authorized to read, print, retain, copy or disseminate this message or any part of it.